IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| MARILYN FLOWERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Civil Action No. |
| v. | ) |
| | ) |
| ALLSTATE TAX GROUP, INC., | ) |
| | ) |
| Defendant. | ) |

## VERIFIED COMPLAINT

Marilyn Flowers hereby files this verified complaint against Allstate Tax Group, Inc. ("Allstate"), as follows.

## NATURE OF THE ACTION

1. This is an action for fraud, conversion and unjust enrichment relating to funds paid by Flowers to Allstate for tax services, which were not performed, and to make tax payments to the Internal Revenue Service (the, "IRS").

## PARTIES

2. Marilyn Flowers is an individual resident and citizen of the State of Georgia, specifically in Forsyth County, Georgia. Flowers resides at 8480 Avalon Court, Cumming, Forsyth County, Georgia 30041. Flowers exclusively resides in Georgia, is registered to vote in Georgia, registers her vehicles in Georgia and pays

income taxes in Georgia. Flowers is subject to the jurisdiction of this Court as a citizen of Georgia and may be served by serving the undersigned.

3. Allstate Tax Group, Inc. is a foreign for profit corporation, incorporated under the laws of the State of California, with its principal office located at 1 Market Street, Spear Tower, 36th Floor, San Francisco, California 94105. Allstate may be served at its principal office.

## JURISDICTION AND VENUE

4. Jurisdiction in this action is proper in this Court pursuant to 28 U.S.C. § 1332(a)(1) as this is a diversity jurisdiction action and all of the plaintiffs are citizens of different States from all of the defendants, and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

5. Venue in this action is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because all, or substantially all, of the acts or omissions giving rise to the claims asserted herein occurred in this District and Division.

6. Allstate regularly conducts business in the State of Georgia.

## FACTUAL BACKGROUND

7. On November 29, 2021, Flowers engaged Allstate for tax remediation services relating to her Form 1040 Individual Income Tax Return for the tax period ending December 31, 2019 (the, "Return").

8.  At the time of engaging Allstate, Flowers owed the IRS principal in the amount of $71,411.00 and penalties in the amount of $14,282.00, which had been fixed, but also interest for the Return in the amount of $3,672.00, which continues to accrue.

9.  Flowers paid Allstate $19,259.00 for these services.

10. Thereafter, Tyler Foster and Chris Bell of Allstate told Flowers that her tax debt had "been shelved for five years," and that there would be no further "accumulation of interest."

11. This was not true.

12. Among other things, the IRS does not shelve tax debt and freeze interest.

13. Interest continued to accrue against Flowers's tax debt.

14. In November of 2024, Lewis Martin of Allstate informed Flowers that Allstate had settled the debt for $38,886.00, which was welcome news, but it was also a lie.

15. Allstate had not settled Flowers's debt at all.

16. Unaware of the lie, Flowers asked Martin how she was to pay the $38,886.00 to the IRS.

17. Martin insisted that Flowers was required to pay Allstate the $38,886.00 and that Allstate would then transmit the funds to the IRS.

18. This was also a lie.

19. Martin stated this lie on behalf of Allstate to induce Flowers to pay the $38,886.00 to Allstate with no intention of returning the funds or of paying the funds to the IRS.

20. On November 15, 2024, Flowers allowed Allstate to withdraw $38,886.00 from her Merrill Lynch account in reliance on Martin's false promises.

21. Allstate never transmitted the funds to the IRS.

22. Flowers addressed the lack of transmission with Martin, who rebuffed Flowers and insisted that the funds had been transmitted.

23. On April 15, 2025, Flowers received communications from the IRS demonstrating that the funds had never been transmitted.

24. Flowers attempted to contact Allstate and Martin to discuss the matter further, but Allstate and Martin have refused to return her correspondence.

25. At the time of filing this Verified Complaint, Flowers's interest owed to the IRS has grown by an additional $39,434.00.

26. Flowers now sues for damages.

## COUNT I
### Fraud

27. Flowers restates paragraphs 1-26 and incorporates said paragraphs herein by reference.

28. On November 29, 2021, Flowers engaged Allstate for tax remediation services relating to her 2019 Return.

29. At the time of engaging Allstate, Flowers owed the IRS principal in the amount of $71,411.00 and penalties in the amount of $14,282.00, which had been fixed, but also interest for the Return in the amount of $3,672.00, which continues to accrue.

30. Flowers paid Allstate $19,259.00 for these services.

31. Thereafter, Tyler Foster and Chris Bell of Allstate told Flowers that her tax debt had "been shelved for five years," and that there would be no further "accumulation of interest."

32. This was not true.

33. Among other things, the IRS does not shelve tax debt and freeze interest.

34. Interest continued to accrue against Flowers's tax debt.

35. In November of 2024, Lewis Martin of Allstate informed Flowers that Allstate had settled the debt for $38,886.00, which was welcome news, but it was also a lie.

36. Allstate had not settled Flowers's debt at all.

37. Unaware of the lie, Flowers asked Martin how she was to pay the $38,886.00 to the IRS.

38. Martin insisted that Flowers was required to pay Allstate the $38,886.00 and that Allstate would then transmit the funds to the IRS.

39. This was also a lie.

40. Martin stated this lie on behalf of Allstate to induce Flowers to pay the $38,886.00 to Allstate with no intention of returning the funds or of paying the funds to the IRS.

41. On November 15, 2024, Flowers allowed Allstate to withdraw $38,886.00 from her Merrill Lynch account in reliance on Martin's false promises.

42. Allstate never transmitted the funds to the IRS.

43. Flowers addressed the lack of transmission with Martin, who rebuffed Flowers and insisted that the funds had been transmitted.

44. On April 15, 2025, Flowers received communications from the IRS demonstrating that the funds had never been transmitted.

45. Flowers attempted to contact Allstate and Martin to discuss the matter further, but Allstate and Martin have refused to return her correspondence.

46. At the time of filing this Verified Complaint, Flowers's interest owed to the IRS has grown by an additional $39,434.00.

47. Flowers relied upon the series of lies stated by Allstate through its agents and employees Foster, Bell and Martin, to pay Allstate a total of $58,145.00

($19,259.00 in fees and $38,886.00 in funds transmitted with the intent of paying the IRS).

48. Allstate is liable to Flowers for fraud in at least the amount of $97,579.00 which represents the $58,145.00 that Flowers has paid and transmitted to Allstate and the additional $39,434.00 of interest that Flowers now owes the IRS.

## COUNT II
### Unjust Enrichment

49. Flowers restates paragraphs 1-48 and incorporates said paragraphs herein by reference.

50. On November 29, 2021, Flowers engaged Allstate for tax remediation services relating to her 2019 Return.

51. Flowers paid Allstate $19,259.00 for these services.

52. Thereafter, Tyler Foster and Chris Bell of Allstate told Flowers that her tax debt had "been shelved for five years," and that there would be no further "accumulation of interest."

53. This was not true.

54. Among other things, the IRS does not shelve tax debt and freeze interest.

55. Interest continued to accrue against Flowers's tax debt.

56. In November of 2024, Lewis Martin of Allstate informed Flowers that Allstate had settled the debt for $38,886.00, which was welcome news, but it was also a lie.

57. Allstate had not settled Flowers's debt at all.

58. Unaware of the lie, Flowers asked Martin how she was to pay the $38,886.00 to the IRS.

59. Martin insisted that Flowers was required to pay Allstate the $38,886.00 and that Allstate would then transmit the funds to the IRS.

60. This was also a lie.

61. Martin stated this lie on behalf of Allstate to induce Flowers to pay the $38,886.00 to Allstate with no intention of returning the funds or of paying the funds to the IRS.

62. On November 15, 2024, Flowers allowed Allstate to withdraw $38,886.00 from her Merrill Lynch account in reliance on Martin's false promises.

63. Allstate never transmitted the funds to the IRS.

64. On April 15, 2025, Flowers received communications from the IRS demonstrating that the funds had never been transmitted.

65. Allstate did nothing to earn the $58,145.00 that she paid to Allstate ($19,259.00 in fees and $38,886.00 in funds transmitted with the intent of paying the IRS).

66. It would be inequitable to allow Allstate to retain the $58,145.00.

67. Allstate is liable to Flowers for unjust enrichment in at least the amount of $58,145.00.

## COUNT III
### Conversion

68. Flowers restates paragraphs 1-67 and incorporates said paragraphs herein by reference.

69. Flowers paid Allstate $19,259.00 for tax remediation services.

70. Allstate never performed any services for Flowers.

71. On November 15, 2024, Flowers allowed Allstate to withdraw $38,886.00 from her Merrill Lynch account in reliance on Martin's false promises that the funds would be transmitted to the IRS.

72. Allstate never transmitted the funds to the IRS.

73. Flowers attempted to contact Allstate and Martin to discuss the matter further, but Allstate and Martin have refused to return her correspondence.

74. Allstate refused to return the $19,259.00 to Flowers.

75. Allstate refused to return the $38,886.00 to Flowers.

76. Allstate is liable to Flowers for conversion in at least the amount of $58,145.00.

## COUNT IV
## Attorneys' Fees

77. Flowers restates paragraphs 1-76 and incorporates said paragraphs herein by reference.

78. Flowers attempted to resolve this matter amicably.

79. Allstate has repeatedly rebuffed Flowers's ovations.

80. Flowers made formal demands, to which Allstate did not respond.

81. Allstate refused to resolve this matter reasonably.

82. Allstate has been stubbornly litigious.

83. Flowers is entitled to attorneys' fees and costs for having to bring and maintain this action pursuant to O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

WHEREFORE, Flowers prays for judgment as requested above against Allstate Tax Group, Inc. and further request:

    a.    An award of damages as stated per this Complaint;

    b.    Incidental and consequential damages;

    c.    Punitive damages;

    d.    An award of attorneys' fees and costs in bringing and maintaining this action; and

    e.    Any other relief as this Court may deem just and reasonable.

## DEMAND FOR JURY TRIAL

Flowers requests a trial by jury on all issues so triable.

Respectfully submitted, this 20th day of May, 2025.

        FGP LAW, LLC

        /s/ Frank G. Podesta
        Frank G. Podesta
        Georgia Bar No. 496530
        fpodesta@fgplaw.com

        555 Sun Valley Drive
        Suite N-3
        Roswell, Georgia 30076
        678.677.5143 (voice)
        678.222.0123 (facsimile)
        *Attorneys for Marilyn Flowers*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | |
|---|---|
| MARILYN FLOWERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | |
| ) | |
| ALLSTATE TAX GROUP, INC., ) | |
| ) | |
| Defendant. ) | |

## VERIFICATION OF VERIFIED COMPLAINT

STATE OF GEORGIA )
)
COUNTY OF FORSYTH )

Personally appeared before the undersigned attesting officer, duly authorized to administer oaths, Marilyn Flowers, who, after being duly sworn, deposes and states on oath that the allegations, facts and claims contained in this Verified Complaint are true and correct upon her personal knowledge and belief.

This 22 day of May, 2025.

_____
Marilyn Flowers

Sworn to and subscribed before me this
22nd Day of May, 2025.

_____
Notary Public       (SEAL)
My commission expires: 08/31/2027



TRACI D HOLMAN
Notary Public, Georgia
Cherokee County
My Commission Expires
August 31, 2027

12